UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICENTE GUERRA,

    Plaintiff,

v.                                                      Case No: 8:19-cv-985-T-36TGW

DESTINY HOMES OF FLORIDA, INC.,
DESTINY INDUSTRIES, LLC, GSF
MORTGAGE CORP. and NATIONAL
CAPITAL FUNDING, LTD.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court upon GSF Mortgage Corp.'s Motion to Dismiss (Doc. 12) and Plaintiff's response in opposition (Doc. 41), Destiny Industries, LLC's Motion to Dismiss (Doc. 32) and Plaintiff's response in opposition (Doc. 51), and National Capital Funding, LTD's Motion to Dismiss (Doc. 33) and Plaintiff's response in opposition (Doc. 52). For the reasons that follow, the Court will grant the motions and dismiss counts 2, 4, and 6 of Plaintiff's Complaint, as to the moving defendants, without prejudice.

**I.    FACTS**[1]

In 2017, Plaintiff Vicente Guerra ("Plaintiff") and his wife started searching for a new home. Doc. 1 at ¶ 13. At that time, Plaintiff and his wife owned their home and property located at 2525 Cresap Street, Lakeland, Florida 33815 (the "Property") outright. *Id.* at ¶ 14. Around the end of 2017, Plaintiff spoke with Destiny Homes of Florida, Inc. ("Destiny") about the possibility of purchasing a new home to put on the Property. *Id.* at ¶ 16.

---

[1] The facts are derived from the Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on motions to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

Plaintiff informed Destiny that to go through with a home purchase, Plaintiff would need a low monthly mortgage payment. *Id.* at ¶ 17. Destiny promised Plaintiff that it would "take care of" him by giving him cash within a mortgage ("Cash Payout") for a new home if he agreed to purchase a home from Destiny. *Id.* at ¶ 18. Destiny assured Plaintiff that both the Cash Payout and the home mortgage loan would be included in one monthly mortgage payment for Plaintiff's new home. *Id.* at ¶ 19.

After Destiny's assurances to Plaintiff, Plaintiff and his wife went to choose a home from a showroom floor. *Id.* at ¶¶ 22-23. Destiny told Plaintiff the home he wanted was unavailable, but offered to provide a new model home that was the same. *Id.* at ¶¶ 23-27. Plaintiff moved forward, and on December 19, 2017, Destiny e-mailed Plaintiff that Destiny received approval for financing Plaintiff's new home mortgage through GSF Mortgage Corp. ("GSF"). *Id.* at ¶¶ 27-28, exh. A.

On January 20, 2018, Destiny emailed Plaintiff a contract to sign for the new home and stated that the monthly payment would be about $1,150.00 each month considering the $18,000.00 "in pay off" they previously discussed as part of the Cash Payout. *Id.* at ¶ 29, exh. B. On February 23, 2018, Plaintiff signed the contract with Destiny ("Home Contract") that identifies Plaintiff's new home as a 2018 "Destiny Industries LLC Timberline Elite," and identifies Destiny as the dealer. *Id.* at ¶ 30, exh. C. The Home Contract listed a total price of $151,889.00 including the "pay off" of $18,000.00 promised by Destiny as part of the Cash Payout. *Id.* at ¶ 31, exh. C. The Home Contract stated the "proposed delivery date" was "ASAP." *Id.* at ¶ 33. The same day, Plaintiff signed paperwork where Destiny agreed to provide certain upgrades to the home, including the interior wall colors, the kitchen cabinets, and the backsplash ("Home Color Selections"). *Id.* at ¶ 34, exh. D.

On March 2, 2018, Destiny signed a Manufactured/Modular Home Construction Draw Disclosure which identified Destiny as the Retailer Company ("Draw Disclosure"). *Id.* at ¶ 35, exh. E. The Draw Disclosure identified National Capital Funding, LTD. ("National"), a "Construction Funds Administrator" for Destiny, as having various responsibilities, including inspecting the construction project and determining the construction draw amount. *Id.* at ¶¶ 9, 36, exh. E.

The same day, Destiny signed a Builder's Certification of Plans, Specifications, and Site ("Builder's Certification"), which identified GSF as the lender of Plaintiff's mortgage, Destiny as the Builder's Company, and stated that Destiny "ha[s] a contract with Destiny Industries, LLC ["Destiny Industries"] to market this house." *Id.* at ¶ 37, exh. F. On March 26, 2018, Plaintiff and his wife executed and delivered a note and mortgage (collectively "Mortgage") in favor of GSF secured by their anticipated new home, "Year: 2018; Make: Destiny Industries, LLC; Model: Timberline Elite; Size: 60 X 32; New; Serial Number:_____," which "shall constitute a part of the realty" at the Property address of 2525 Cresap St., Lakeland, FL 33815. *Id.* at ¶ 38, exh. G.

Sometime thereafter, Destiny began to tear down Plaintiff's previous home on his Property. *Id.* at ¶ 39. Plaintiff and his family moved into a small apartment while the Property was under construction for the new home. *Id.* at ¶ 40. On May 8, 2018, Destiny sent Plaintiff an e-mail that stated the new home would be shipped sometime at the beginning of June and that it would take 45 more days after the delivery to finish the new home. *Id.* at ¶ 41, exh. H.

Destiny failed to ship the new home until almost a year after Destiny signed the Home Contract. *Id.* at ¶ 42. When Plaintiff did visit the new home, to his surprise, it was nothing like the one agreed to in the Home Contract. *Id.* at ¶ 45. The roof was cracked and leaking excessively, the

walls were covered with stains which Destiny attempted to paint over, the lighting fixtures on the ceiling were falling off, the door hinges were broken, and the wall trimming was misaligned in multiple places. *Id.* at ¶ 46. Moreover, the home was not a 2018 model that Destiny contracted to build in the Home Contract and GSF had identified in the Mortgage, but rather a 2017 model home. *Id.* at ¶ 47. Additionally, Destiny failed to install Plaintiff's specific instructions listed in the Home Color Selections, including the colors of the kitchen cabinets. *Id.* at ¶ 48.

Plaintiff informed Destiny that until the home was fixed, he was not going to sign the final documents or make payments toward the Mortgage. *Id.* at ¶ 51. Plaintiff rejected the final documents and never took possession of the home. *Id.* at ¶ 52. As a result, Plaintiff incurred an alleged balance on the Mortgage ("Debt"). *Id.* at ¶ 53.

Destiny did not give Plaintiff the Cash Payout that was promised to him as part of the Home Contract. *Id.* at ¶ 54. GSF did not give Plaintiff the Cash Payout. *Id.* at ¶ 55.

On September 24, 2018, Destiny e-mailed Plaintiff, telling him to expect a call from GSF. *Id.* at ¶ 56, exh. I. In that e-mail, Destiny acknowledged that Plaintiff was not willing to sign the final documents on his new home because of his concerns, and stated Destiny would inform GSF about "the extra funding that was put into [the] deal as a land payoff[.]" *Id.* at ¶ 57, exh. I. On October 23, 2018, Destiny e-mailed Plaintiff and informed him that Destiny talked to GSF. *Id.* at ¶ 58, exh. J. Destiny stated in the same email that GSF assured Destiny that GSF would refinance Plaintiff's home after six months so that Plaintiff could get the cash out that Destiny promised to him. *Id.* at ¶ 59, exh. J.

On October 25, 2018, Destiny left Plaintiff a voicemail stating they wanted to "work things out before the bank has to do whatever they have to do." *Id.* at ¶ 60. During this time period, National also began calling Plaintiff in attempts to collect on the alleged Debt. *Id.* at ¶ 61. In April

of 2019, Plaintiff, through counsel, notified GSF that he rejected the Mortgage, did not get the home that he had contracted for, did not get the Cash Payout that was included in the Mortgage, and demanded that GSF take the home off his Property. *Id.* at ¶ 62. GSF has refused to remove the home. *Id.* at ¶ 63. Destiny continued attempting to collect on the alleged Debt. *Id.* at ¶ 65.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

In addition to satisfying the general pleading requirements articulated in *Twombly* and *Iqbal*, certain claims must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), which places more stringent pleading requirements on cases alleging fraud. *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301 (11th Cir. 2002). "[U]nder Rule 9(b) allegations of fraud must include facts as to time, place, and substance of the defendant's alleged fraud." *Id.* at 1308 (citation and internal quotations omitted). The Rule 9(b) particularity requirement for fraud allegations exists to put defendants on notice as to the exact misconduct with which they are

charged and to protect defendants against spurious charges. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). The failure to satisfy Rule 9(b)'s pleading requirements amounts to a failure to state a claim under Rule 12(b)(6) and requires dismissal of the complaint. *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

### III. ANALYSIS

#### A. Plaintiff's FCCPA Claim Against National is Dismissed (Count 2)

In Count 2, Plaintiff brings a claim against National for violations of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 ("FCCPA"), specifically, §§ 559.72(7) and (9). Doc. 1 at ¶ 81. Plaintiff alleges National violated § 559.72(7) by "willfully engaging in conduct which can reasonably be expected to harass Mr. Guerra by attempting to collect the alleged Debt in full even after" National "knew or had reason to know that Mr. Guerra did not receive the Cash Payout from Destiny and therefore did not owe the total amount on the Mortgage." Doc. 1 at ¶ 81a. Plaintiff also alleges National violated § 559.72(9) by "attempting to enforce an alleged Debt" that National "knew was not legitimate because Mr. Guerra never received the Cash Payout from Destiny and therefore did not owe the total amount on the Mortgage." *Id.* at ¶ 81b.

Under § 559.72(7), a person shall not "[w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." And under § 559.72(9), a person collecting a consumer debt shall not "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

Among other things,[2] National argues Count 2 should be dismissed because Plaintiff fails to sufficiently allege National had the requisite intent, fails to sufficiently allege National had knowledge that Plaintiff did not receive the Cash Payout and therefore did not owe the amount under the Mortgage, and fails to sufficiently allege harassment given Plaintiff's single allegation about National's call(s) to Plaintiff—specifically, that National "began calling" Plaintiff "to collect on the alleged Debt." Doc. 33 at p. 6.

The Court agrees that Plaintiff fails to plausibly allege facts that give rise to a FCCPA claim. Plaintiff's allegations that National violated the FCCPA under §§ 559.72(7) and (9) are conclusory. Doc. 1 at ¶ 81. The allegations blankly state that National "knew or had reason to know" that Plaintiff did not owe the amount on the Mortgage because he did not receive the Cash Payout from Destiny. *Id.* Plaintiff provides no detail as to how or why National may have known this. Although Plaintiff attempts to connect the dots in its response, doc. 52 at pp. 9-11, the allegations in the Complaint remain insufficient.

More critically, Plaintiff provides sparse allegations about National's alleged debt collections. The only allegation is that National "began calling" Plaintiff "in attempts to collect on the alleged Debt." Doc. 1 at ¶ 61. Plaintiff provides no other allegations about the phone call(s), for example, to whom the calls were placed, where they were placed or received, how many times calls were placed, or what the content of the calls were. There is simply no information from which the Court can infer that National made any harassing calls.

---

[2] National also argues there is no debt in this case as a matter of law. National does not cite any case law in support of its argument. Notwithstanding, the Court does not reach the argument because it finds National's other arguments with respect to Count 2 are dispositive.

Because Plaintiff fails to plausibly allege that National violated the FCCPA, Count 2 is due to be dismissed. However, because the Complaint is Plaintiff's first in this action, he will be given leave to amend.

**B. Plaintiff's Rescission Claim Against GSF is Dismissed (Count 6)**

In Count 6, Plaintiff brings a claim against GSF for rescission based on fraud. Doc. 1 at ¶¶ 172-173. In Count 6, Plaintiff alleges "Destiny and GSF fraudulently misrepresented that [Plaintiff] would receive $18,000 in the Cash Payout" and "the home agreed upon in the Home Contract" when Destiny and GSF knew Plaintiff would receive neither. *Id.*

To state a claim for rescission under Florida law, a plaintiff must allege

(1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation; (4) the party seeking rescission had rescinded the contract and notified the other party to the contract of such rescission; (5) the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) the moving party has no adequate remedy at law.

*Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002) (citing *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. 2d DCA 1965)).

GSF argues Count 6 should be dismissed because Plaintiff fails to assert many of these elements. Doc. 12 at pp. 20-22. The Court agrees. Most glaring is the element with respect to fraud. Although Count 6 is brought against GSF only, it provides few factual allegations concerning that defendant. The majority of the allegations in Count 6 are about Destiny's allegedly fraudulent communications and dealings with Plaintiff. The only time GSF's alleged fraud is mentioned in Count 6 is where Plaintiff states "Destiny and GSF fraudulently misrepresented that [Plaintiff] would receive" the Cash Payout and the home agreed to in the Home Contract. Doc. 1 at ¶¶ 172-173. But Plaintiff provides no allegations about how GSF made such fraudulent

misrepresentations. The majority of Plaintiff's allegations about GSF discuss what Destiny represented to Plaintiff about GSF; not what GSF represented to Plaintiff. *See* doc. 1 at ¶¶ 28, 56-59. Plaintiff provides no allegations as to time, place, and substance of GSF's alleged fraud.

It is questionable whether Plaintiff's allegations in Count 6 meet the standards of Rule 8. The allegations certainly do not meet the standards of Rule 9(b). Plaintiff's claim against GSF is due to be dismissed. However, because the Complaint is Plaintiff's first in this action, he will be given leave to amend.

### C. Plaintiff's RICO Claim Against National, GSF, and Destiny Industries is Dismissed (Count 4)

In Count 4, Plaintiff brings a claim against all defendants for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). At the outset, to state a RICO claim, a plaintiff must sufficiently allege "that a defendant participated in an illegal enterprise through a pattern of racketeering activity." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing 18 U.S.C. § 1962(c)) (internal quotation marks omitted). "Racketeering activity" includes various criminal offenses, such as mail and wire fraud. *See* 18 U.S.C. § 1961(1). To allege a pattern of racketeering, a plaintiff must allege "at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *Am. Dental Ass'n*, 605 F.3d at 1290.

An alleged pattern of racketeering consisting of predicate acts of mail and wire fraud "must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard." *Id.* at 1291. Thus,

> a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."

*Id.* (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir.1997)). The plaintiff must allege such facts "with respect to each defendants' participation in the fraud." *Id.*

In Count 4, Plaintiff alleges "[d]efendants maintained a fraudulent home construction and mortgage enterprise affecting interstate commerce through 'racketeering activity' in violation of RICO, 18 U.S.C. § 1962, as [d]efendants' acts are indictable as mail or wire fraud under 18 U.S.C. § 1341 and 18 U.S.C. § 1343." Doc. 1 at ¶ 134. Plaintiff alleges defendants continue to engage "in the practice of unlawful home construction and mortgage practices." *Id.* at ¶ 137. Plaintiff lists a number of "predicate acts" which it alleges defendants took:

> a. Predicate Act # 1: Defendant Destiny solicited and promoted the fraudulent home construction and mortgage loan scheme by falsely advertising its services as legal through the U.S. Mails and interstate wires, which advertising included posting false advertisements online and sending emails to Mr. Guerra.
>
> b. Predicate Act # 2: Defendant Destiny misrepresented that it would give Mr. Guerra a cash payout for him to pay his credit card debt as part of his Mortgage through email on January 20, 2018 and in previous oral conversations, with specific intent to induce Mr. Guerra to buy a home from Destiny in furtherance of Defendants' fraudulent home construction and mortgage loan scheme.
>
> c. Predicate Act # 3: Defendants' Draw Disclosure dated March 2, 2018 stated that National Capital was to direct the Interim Funding Source (GSF) to use interstate wires to wire the funds for the construction project to the Settlement Agent for the Settlement Agent to disburse such funds to Destiny, in furtherance of Defendants' fraudulent home construction and mortgage loan scheme. See Exhibit E.
> d. Predicate Act # 4: Defendant Destiny signed a Builder's Certification dated March 2, 2018 which identified GSF as the lender of Mr. Guerra's Mortgage, Destiny as the Builder's Company, and stated that Destiny "ha[s] a contract with Destiny Industries, LLC to market this house[,]" in furtherance of Defendants' fraudulent home construction and mortgage loan scheme.
>
> e. Predicate Act # 5: GSF entered into a Mortgage agreement with Mr. Guerra and his wife at the inflated amount that included the illegal Cash Payout when GSF knew that such Cash Payout would never be performed, in furtherance of Defendants' fraudulent home construction and mortgage loan scheme.

> f. Predicate Act # 5:[3] Destiny misrepresented that it could finish Mr. Guerra's home prior to when Destiny intended for it to be done through email on May 8, 2018, which stated the new home would be shipped sometime at the beginning of June and that it would take 45 more days after the delivery to finish Mr. Guerra's new home.
>
> g. Predicate Act # 6: On September 24, 2018, Defendant Destiny sent an interstate email to Mr. Guerra and stated it would inform GSF about "the extra funding that was put into [Mr. Guerra's] deal as a land payoff[,]" in furtherance of Defendants' fraudulent home construction and mortgage loan scheme.
>
> h. Predicate Act # 7: On October 23, 2018, Defendant Destiny sent an interstate email to Mr. Guerra pressuring Mr. Guerra to follow through with the transaction so that "they won't have to foreclose on [Mr. Guerra's] property[,]" and held out that a representative of GSF would be willing to refinance Mr. Guerra's home in six months in order for Mr. Guerra to get the Cash Payout Mr. Guerra was promised, in furtherance of Defendants' fraudulent home construction and mortgage loan scheme.
>
> i. Predicate Act # 8: On October 25, 2018, Defendant Destiny placed an interstate call to Mr. Guerra pressuring Mr. Guerra to follow through with the transaction stating Destiny wanted to "work things out before the bank has to do whatever they have to do[,]" in furtherance of Defendants' fraudulent home construction and mortgage loan scheme.
>
> j. Predicate Act # 9: In or around January of 2019, Defendant National Capital placed an interstate call to Mr. Guerra in attempts to collect the alleged outstanding balance owed to National Capital for the new home in furtherance of Defendants' fraudulent home construction and mortgage loan scheme.

*Id.* at ¶¶ 136a-136j (internal citations to exhibits omitted) (footnote added).

Three of the four defendants, GSF, National, and Destiny Industries, move to dismiss Plaintiff's RICO claim as to them. To begin, within their separate motions, the moving defendants generally argue Plaintiff fails to plead fraud with particularity, fails to plausibly allege predicate acts, and fails to plausibly allege a pattern of racketeering.

GSF and National argue Plaintiff fails to plead a RICO claim in Count 4 because he fails to plead fraud with particularity. GSF argues the Complaint is devoid of any wire or mail

---
[3] Plaintiff's sequence is mis-numbered.

transmissions by GSF and devoid of any allegations about the content of GSF's misrepresentations. National similarly argues it is hardly discussed in Count 4. Both defendants, as well as Destiny Industries, argue GSF lumps them together without identifying the actions each defendant separately took. Doc. 12 at pp. 8-10; Doc. 32 at p. 5; Doc. 33 at pp. 8-9. The Court agrees with the moving defendants' assessments.

First, the Complaint fails to plead mail and wire fraud with specificity pursuant to Rule 9(b). The majority of Plaintiff's predicate act allegations discuss Plaintiff's dealings with Destiny and Destiny's representations. The "predicate acts" that do mention GSF, National, or Destiny Industries do not connect GSF, National, or Destiny Industries to any fraudulent conduct other than by conclusion. *E.g.*, doc. 1 at ¶¶ 136c (stating National used interstate wires to fund the construction project "in furtherance of [d]efendants' fraudulent . . . scheme"), 136j (stating National made a debt collection call to Plaintiff "in furtherance of [d]efendants' fraudulent . . . scheme"). Count 6 wholly fails to provide any specific allegations from which the Court can infer that National, Destiny Industries, or GSF are responsible for the claimed RICO violations predicated upon mail and wire fraud. Plaintiff's RICO claim against these defendants is due to be dismissed for this reason alone.

For the same and similar reasons, Count 4 fails to assert sufficient predicate acts or a pattern of racketeering as to the moving defendants. As just discussed, the moving defendants' actions are minimally discussed in Count 4 and, where they are discussed, allegations surrounding their alleged fraudulent conduct are conclusory. Plaintiff's allegations do not plausibly allege predicate acts nor a pattern of racketeering as to the moving defendants.[4]

---

[4] The Court notes the moving defendants provide additional arguments in support of their motions to dismiss the RICO count. However, because the arguments discussed above are dispositive, and because Plaintiff will be provided leave to amend, the Court does not discuss each and every additional argument in detail. If Plaintiff's pleading remains

Accordingly, it is **ORDERED:**

1. GSF Mortgage Corp.'s Motion to Dismiss (Doc. 12) is **GRANTED.**

2. Destiny Industries, LLC's Motion to Dismiss (Doc. 32) is **GRANTED.**

3. National Capital Funding, LTD's Motion to Dismiss (Doc. 33) is **GRANTED.**

4. Counts 2 and 6 of Plaintiff's Complaint (Doc. 1) are **DISMISSED** without prejudice. Count 4 of Plaintiff's Complaint (Doc. 1) is **DISMISSED** without prejudice as to defendants GSF Mortgage Corp., Destiny Industries, LLC, and National Capital Funding, LTD.

5. Plaintiff is granted leave to file an Amended Complaint **WITHIN FOURTEEN (14) DAYS** from the date of this Order. Failure to file an Amended Complaint within the time permitted, will result in dismissal of the above-referenced counts without further notice.

**DONE AND ORDERED** in Tampa, Florida, on January 28, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

deficient after amendment, the Court will address the arguments in later motions to the extent the same issues are raised.